## KAPIOLANI ESTATE, LIMITED, v. L. A. THURSTON.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED JANUARY 3, 1905.   DECIDED FEBRUARY 20, 1905.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE MATTHEW-MAN IN PLACE OF HATCH; J.

EJECTMENT—*evidence—marriage—estoppel—adverse possession.*

The administrator with the will annexed of the Estate of Kalakaua (from whom the plaintiff in the present case claimed title) retained counsel to defend an action of ejectment by one Oku against Cummins, Kalakaua's lessee. Held: Evidence of the defense of the action at the instance of the administrator was inadmissible for the purpose of showing that Kapiolani, the devisee of Kalakaua, was estopped by the judgment in the case against Cummins.

The plaintiff in this action introduced evidence that one Oku was married to one Kahoopuipui at Ewa in February, 1861, by Rev. A. Bishop, who gave them a certificate of marriage which was lost. The defendant offered in evidence a marriage record kept by the clergyman mentioned for a term of years including the year 1861, and which had no record of the marriage. Whether the record is admissible for the purpose of disproving the alleged marriage, quaere.

Certain deeds executed by Kahoopuipui and one Keawe as husband and wife were properly admitted in evidence to rebut the disputed evidence of a ceremonial marriage of Kahoopuipui to another man.

Conveyances and mortgages made by Kalakaua and Kapiolani
and by the trustees of Kalakaua were improperly admitted as evi-
dence to rebut defendant's evidence of adverse possession, and on
that ground a new trial is ordered.

## OPINION OF THE COURT BY HARTWELL, J.

This was an action of ejectment, the defense being a general
denial with notice of intention to set up by way of defense the
statute of limitations, illegality and fraud. The verdict was
for the plaintiff, the defendant alleging exceptions. The fol-
lowing is the statement of the case made in the brief of the
defendant which, according to the brief of the plaintiff, "suf-
ficiently states the preliminary facts in this case."

"The stipulation of the parties admitted a common source of
title in one, Kahoopuipui; the difficulty has arisen from her
having too many putative husbands. The plaintiff claims
through a deed from Kahoopuipui to Kalakaua, dated June
20, 1874, and thence by his will, admitted to probate March
5, 1891, devising his estate to Kapiolani; Kapiolani conveyed
to David Kawananakoa and Jonah Kalanianaole February 10,
1898, from whom by mesne conveyances the property came to
the plaintiff. The defendant claimed that the deed to Kala-
kaua was ineffective on the ground that Kahoopuipui was
married to one Oku at the time of the execution of said deed
and that Oku survived her, inheriting the property and exe-
cuted a deed, dated the 17th day of May, 1895, to Leialoha Ai,
his neice. This deed was excluded by the court but it was
shown that Leialoha Ai was the only heir of said Oku, who
deceased in 1895. A conveyance was further shown from Lei-
aloha Ai and W. R. Castle, as her trustees, with covenants
of warranty to the defendant, L. A. Thurston. To establish
the fact of the marriage of Oku and Kahoopuipui there was
admitted in evidence the record of an action in the supreme
court of the kingdom between Oku as plaintiff and one, J. A.
Cummins, as defendant, for a piece of land at Waimanalo,
tried at the April term of 1892 before Chief Justice Judd for
a portion of the premises included in the deed from Kahoo-
puipui to Kalakaua. The pleadings and records in that case
were introduced and also, by consent, the manuscript notes
of Chief Justice Judd taken at the trial of the proceedings

and evidence. The issues in that case were whether Oku was or was not married to Kahoopuipui in Ewa, in February, 1861, by the Rev. A. Bishop, who gave them a certificate of the marriage. Several witnesses present at the marriage testified to this, all are now dead. The plaintiff in that case accounted for the loss of the certificate by showing that the King, in October, 1890, tore up the marriage certificate with other of Oku's papers. To this several witnesses testified in that trial and corroborated at the present trial. Another issue was whether Oku was estopped by taking a lease from the King and making statements to Cummins, or in his presence, upon which Cummins relied in taking the lease, that he and his wife had given the land to the King. Upon the first issue the plaintiff introduced the Rev. Dr. S. E. Bishop, who produced a book of marriage records, also offered at the present trial to show the non-existence of any entry on this record of such a marriage. Another issue, akin to one already referred to, was whether the relations of Oku to the King were such that the acts in taking a lease, and otherwise, of Oku were such as could constitute admission of title in the King, or, as Chief Justice Judd held it, whether Oku acted under duress. The defendant, in addition to the record above referred to, offered evidence of adverse possession in Oku and his successors for more than the statutory period, and on the cross-examination of the witnesses of the defendant considerable evidence was adduced of reputation, declarations and conduct sufficient to support a finding that Oku and Kahoopuipui were man and wife at the time of the execution of the deed to Kalakaua. The evidence of Mr. Justice Hatch was also offered, who appeared as one of the attorneys for the defense in the suit of *Oku* v. *Cummins,* that he was not employed by the defendant in that action but by the landlord, Kalakaua being dead, by the administrator in the interest of his estate or heir. He testified that he had no direct communication with Kapiolani, who was the sole devisee of Kalakaua, but that he received his instructions from Dr. Trousseau who was the administrator with the will annexed, but that he understood that he was acting for the landlord and not for the administrator. The exact language of Judge Hatch in answer to the court is (trans., p. 24): 'The present representative, Judge, retained me to defend the interest of the landlord, i. e., the estate. The present representative was not directly interested as an adminis-

trator. I was retained to represent the interests of the heir,. the landlord.' Upon the production of a letter from Cummins to Trousseau demanding that he should defend the action, the court, on motion of the plaintiff, struck out the evidence of Judge Hatch. Subsequently, in the trial, Mr. W. R. Castle testified that in the interest of Leialoha Ai, the grantee and devisee of Oku, he saw Kapiolani, talked with her about the matter, found that she knew about the Cummins and Oku suit and she said to him that she had no further interest in the land. The defendant thereupon moved to set aside the ruling striking out the evidence of Judge Hatch which motion was denied. The plaintiff in rebuttal introduced evidence of reputation that the marriage relation existed between Kahoopuipui and one Keawe early in 1874 and also certain deeds executed between 1870 and 1874, signed by Ke- awe and Kahoopuipui. No evidence of any ceremonial marriage was offered or anything directly tending to show such a ceremony of marriage. The plaintiff also put in evidence the records of the trustees, under a mortgage from Kalakaua and their rent roll for the purpose of showing that Oku leased the land in question and other lands of said trustees. These instruments were admitted over the objection of the defendant; also a mortgage made by Kapiolani in 1892 for the pudpose of rebutting evidence of adverse possession, which was also admitted over the objection of the defendant."

The questions presented in the case, as stated in the defendant's brief, are: "First: Did the court err in striking out the testimony of Mr. Justice Hatch? Second: Was it error to admit the marriage record of the Rev. Mr. Bishop? Third: Were the deeds, in which Kahoopuipui and Keawe purported to join as husband and wife, properly admitted to rebut the evidence of a ceremonial marriage furnished by the case of *Oku* v. *Cummins?* Fourth: Did the court properly admit the evidence of conveyances and mortgages made by Kalakaua and Kapiolani and the records of the trustees of Kalakaua's mortgage in order to rebut adverse possession?"

(1) The evidence of Mr. Hatch showed that Dr. Trousseau, the administrator with the will annexed of Kalakaua, retained him to defend, and he did defend the action of ejectment by Oku against Cummins, Kalakaua's lessee. There is

no privity at common law between the executor and the devisee "so as to make a judgment against the decedent's representative binding upon the lands of the heir or devisee." Bige low on Estoppel, 98. One reason for this is that the executor neither represents the land nor the devisee unless (as does not appear in this case), the will imposes upon him some charge or duty concerning the land. The evidence, if admissible at all and not controverted, would be conclusive evidence that the devisee was estopped by the judgment in that case. We are not prepared to accept that view of the law and we therefore hold that the evidence was properly ruled out.

(2) The record of marriages among the parishioners at Ewa, kept by the Reverend Artemas Bishop, appears to have been properly authenticated and would seem to be admissible evidence of marriages therein recorded. · The cases cited by the plaintiff fully sustain this view, but whether the record was admissible for the purpose of disproving the alleged marriage we do not now determine.

(3) We do not sustain the contention of the defendant against the introduction of the deeds in which Kahoopuipui and Keawe represented themselves to be husband and wife. Cases are not in point holding that direct and undisputed proof of marriage is not invalidated by evidence that either of the parties had formed illegitimate relations. In this case the thing sought to be proved by the defendant was a marriage between Kahoopuipui and Oku. We cannot assume that the evidence offered to sustain that claim was indisputable.

(4) The conveyances and mortgages made by Kalakaua and Kapiolani and the records of the trustees of Kalakaua were evidence of claim of ownership and acts of ownership, and the recording of them was notice of the claim; but they do not tend to show actual possession, nor could they affect in any manner evidence of actual possession under claim of right. Therefore these written instruments ought not to have been admitted in evidence.

Upon the fourth ground above mentioned the exceptions are sustained and a new trial is ordered.

*Kinney, McClanahan & Cooper* for plaintiff.

*Castle & Withington* for defendant.